HENRY SMITH *v.* MARY S. ROSE and SANFORD B. DOLE, as Governor of the Territory of Hawaii.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED APRIL 22, 1903.      DECIDED NOVEMBER 16, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The complainant is not an abutter within the terms of section 354, Civil Laws, and has no right to demand that the land embraced in the abandoned street be first offered to him, at a reasonable price, prior to its sale to another. *Held*, that under the facts of the case the decree appealed from should be reversed and the bill dismissed.

OPINION OF THE COURT BY GALBRAITH, J.

This is a bill in equity filed by the complainant, Smith, seeking the cancellation of a deed executed by the Governor of the Territory conveying to the respondent, Rose, a part of an abandoned street or lane. The land conveyed was triangular in form and contained an area of 1,930 square feet. The Circuit Judge found for the complainant and decreed cancelling the deed as prayed. The respondents appealed.

While the bill alleges fraud in the execution of the deed the complainant relies in the main on his assumed rights as an abutting owner under section 354, Civil Laws, to have the abandoned street offered to him at a reasonable price prior to the sale to the respondent and the failure of the Territorial officials to make such offer. It was denied that Smith was an abutting owner.

The Circuit Judge found that both Smith and Rose were abutting owners and in his decision, said, in part, "In my opinion under the provisions of section 354 the abandoned highway,

prior to disposal by the Government, must be offered to *all* of the abutting owners in compromise without distinction and without reference to the amount or character of damages sustained by each, for a reasonable length of time and at a reasonable price and any offer to one or more abutting owners to the exclusion of other abutting owners is a fraud upon the rights of such other abutting owners and a conveyance made pursuant to such fraudulent offer must be set aside."

Section 354 reads.

"All lands and real property taken for highways or improvements under this Act shall belong to the Hawaiian Government absolutely and in fee simple, and in case a highway or improvement shall at any time be vacated, closed, abandoned and discontinued, the land of such highway or improvements shall be used for the purposes of the Government; provided that in case the same shall be in any way disposed of by the Government, it shall be first offered to the abutters in compromise, for a reasonable length of time and at a reasonable price, and if they do not take the same then it may be sold at public auction."

It seems to have been conceded by all of the parties to this suit that the title to the land conveyed vested in the Territory under section 354, although the record shows that the land was not "taken for a highway or improvements under this Act" and that no proceedings were had to vacate or abandon the "highway" as provided in this act and that the "highway" or foot path of which this land formed a part was abandoned, by those who were accustomed to use it, prior to the passage of "this Act" in 1892. And it was also assumed that the Governor had the right to convey the land under section 354. While these assumptions are not free from doubt and may be entirely unfounded, in fact and in law, for the purposes of this case we shall assume them to be true.

Under the issues presented there is but one difficulty in deciding this case, namely, to determine the proper construction to be placed on that part of the section providing that in case the land embraced in the abandoned highway shall be sold by the Territory "it shall be first offered to the abuttors in compromise, for a reasonable price," etc. If the phrase "in com-

promise" were eliminated the difficulty would vanish and the meaning would be plain.

The construction adopted by the Circuit Judge treats the phrase "in compromise" as meaningless and the section as meaning exactly what it would if those words had been omitted. We cannot approve of this construction since we are bound to assume that the legislature had some purpose in inserting the words. The position of the phrase in the sentence seems to warrant the inference that it was used to express the purposes of making the offer and to limit the abuttors who were given the right to demand that the offer be made. All abuttors on an abandoned or vacated street were not given the right by this statute to demand that the land be offered first to them at a reasonable price before being sold, it was only such abuttors as might be injured by the vacation of the highway and thus have a claim for damages against the Territory and whose claim for such damages might be settled or compromised by such offer and a sale in pursuance thereof. To the abutter who was not damaged it would be impossible to make an offer "in compromise." He would have nothing to compromise with the territory for the reason that he was not injured by its acts.

This interpretation does not mean that the land shall be offered to the injured abutter at a reasonable price in exchange or settlement of a claim for damages that an abutter may have on account of the vacation of a street or that the amount of such claim for damages shall be estimated by the Superintendent of Public Works and credited on the price of the land. This of course would be within one meaning of the word "compromise" but the word in this statute is undoubtedly used in another sense, namely, as "an agreement or compact adopted as a means of superseding an undetermined controversy." *Cent. Dic.*

"The legislature, by virtue of its general power over the highways of the state, may, as we have said, undoubtedly order the vacation of such of them as it may deem expedient to vacate, but where the vacation of a highway will cause special injury to an adjoining owner he is entitled to compensation. It is

substantially agreed by the courts that the abutter has a private interest in the road or street as such, and if he has this right it is property which cannot be taken from him without compensation. The right to a road or street which the land owner possesses as one of the public is different from that which vests in him as an adjoining proprietor, and it is also distinct and different from his rights as owner of the servient estate. The right which an abutter enjoys as one of the public and in common with other citizens is not property in such a sense as to entitle him to compensation on the discontinuance of the road or street; but with respect to the right which he has in the highway as a means of enjoying the free and convenient use of his abutting property it is radically different, for this right is a special one. If this special right is of value—and it is of value if it increases the worth of his abutting premises,—then it is property, no matter whether it be of great or small value. Its value may furnish the standard for measuring the compensation, but it cannot change the nature of the right itself. For this reason, we think that the discontinuance or vacation of a street in such a manner as to prevent access to the property of an adjoining owner is a 'taking' of property within the constitutional inhibition and cannot be lawful without compensation to such owner." Elliot, Roads and Streets, 2nd. Ed., Sec. 877.

Of two abutting owners on an abandoned highway, one has the same free and convenient access to his premises after as before the vacation while the access of the other to his premises is entirely cut off. No offer in compromise could be made to the first for the reason that he has sustained no injury and has nothing to compromise with the Territory but between the latter and the Territory there exists "an undetermined controversy" on account of his property taken and his right destroyed by the abandonment of the street. The latter is the abutter to whom the land must be offered before sale and the former although an abutter is not within the terms of the statute and has no rights under it.

The abutter whose access to the highway is cut off by the vacation of the street if the abandoned land goes to a stranger will be injured if not permitted to buy the abandoned portion while if the offer is made to him at a reasonable price for a reasonable time and he purchases he would not be injured.

The evidence shows that the respondent, Rose, was an abutter on the abandoned street; that the land conveyed was between her premises and the highway, Fort Street, and that her only outlet to the highway was over this land; that the complainant was an abutter to a small part of the land but that none of it lay between his premises and Fort Street and that his access to Fort Street was as free and convenient after as before the abandonment; that while it would doubtless have been to Smith's advantage to own the abandoned street in order to enable him to exchange it with Mrs. Rose for another tract of her land which he desired still he was not deprived of any property right by the abandonment of the street or denied any right given him by law by the failure of the Superintendent of Public Works to offer him the land "in compromise."

By the offer in compromise to Mrs. Rose and her acceptance she obtained an outlet to the highway and her claim for damages, that would have accrued had the land been sold to complainant or any other person, was "superseded," i. e., "displaced, supplanted, set-aside, suspended, stayed." The conveyance to her may properly be called, "an agreement or compact adopted as the means of superseding an undetermined controversy." This was the direct effect of the sale to her and in this sense the land was offered to her "in compromise" and she was the only person who was entitled under the statute to such an offer.

The bill should have been dismissed for want of equity. The decree appealed from is reversed and the cause remanded to the Circuit Judge with direction to dismiss the bill and for such further proceedings as may be proper.

*E. C. Peters* for complainant.

*J. W. Cathcart* for the Governor.

*Kinney, McClanahan & Bigelow* for Mrs. Rose.

### CONCURRING OPINION OF FREAR, C.J.

I concur in the foregoing conclusion, but express no opinion as to the significance of the words "in compromise" in the statute, except that the construction of those words contended

for by the plaintiff, to the effect that they require the entire land (e. g., a long street that is closed) to be offered as a whole to all the abutters to be divided among themselves in compromise with each other, clearly cannot be sustained. That construction would violate both the language and the spirit of the section and be unreasonable and impracticable. The words "in compromise" in this section are to say the least used somewhat loosely and their meaning is very obscure.

There are several other points in the case which make it doubtful if the desired relief could be granted even if the plaintiff's main contention were correct, but it is unnecessary to consider these.

If the land is not to be offered to all the abutters together to divide among themselves, as is clear, how should it be offered? Certainly not all the land to each abutter in turn. It would be unfair and contrary to the spirit of the statute to offer to one abutter the whole of a tract upon which there were other abutters, and that would be impracticable, for, if the offer were accepted by one, it could not be made to or accepted by any of the others. The only alternative would be to divide the land and offer each part to the abutter on that part. That would be the fair way and evidently the way called for by the spirit of the statute. In most cases there would be no difficulty in doing this with fairness. But, as in this instance, the circumstances might be such as to render it difficult to say just who are the abutters and to what extent. It is clear that Mrs. Rose was at least the principal abutter on the land in question. Nearly if not quite all of it is in front of her lot, while only a short stretch of a side of Mr. Smith's lot borders on it and that not immediately, for a narrow strip along his lot was withheld from Mrs. Rose, perhaps accidentally, and afterwards offered to Mr. Smith. A continuation of this tract in what is known as "Old Lane," which ran between two pieces of Mr. Smith's land, has all been conveyed to him, and, that, too, though Mrs. Rose's lot, for a short distance on one side, bordered on that in much the same way that Mr. Smith's borders on this. The whole transaction cannot be set aside merely because the Superintendent of Public

Works may not have divided the land exactly as the court would. Some room must be left for the exercise of discretion in the execution of the details. No better mode of division than that made has been suggested to the court, and it is not clear that there is any better or fairer.

### CONCURRING OPINION OF PERRY, J.

I concur in the conclusion that the bill should be dismissed.

In my opinion the offer contemplated in Section 354 is to be made to all of the abutters, whoever the class so designated may include, that is to say, to each of the abutters the portion on which his land abuts. The words "in compromise" do not, as I think, limit the class of abutters to whom the offer is to be made, but are to be read and understood as though inserted immediately after the word offered, i. e., they were intended to show the nature or the object of the offer and not to describe the permitted purchasers at private sale. Nor does the section permit the construction suggested by one of the respondents that the amount of damages, if any, claimed by an abutter by reason of the closing of the highway, may be deducted from the value of the abandoned strip as fixed by the Government, that is to say, that the words "at a reasonable price" mean at a price reasonable in view of the fact that a counterclaim is being adjusted and settled. I see no reason for giving the words last quoted any other than their ordinary meaning, to wit, "at a fair valuation." Certainly, if, after refusal by the abutters to take at the price named, the land is, under the alternative provision of the statute, sold at public auction, the market price is the price intended and in that event no allowance can be made for any monetary claim against the Government. If it be asked why the words "in compromise" were inserted, I suggest that the most plausible theory is that what the legislature had in mind was a satisfaction of claims, founded on justice if not on law, that abutters might make to the effect that such abutters should be given the first opportunity to acquire the abandoned strip. Of course in a case where the title to the land was not in

the Government and was claimed by the abutters different questions might arise which need not be here considered.

Who are included within the term "abutters" as used in this section is a question the answer to which, as it seems to me, must depend upon the circumstances of each particular case. It will serve no good purpose to attempt a general definition to apply in all cases. Under the circumstances of the case at bar I am of the opinion that the respondent Mary Rose is an abutter upon the strip in question and that the complainant is not. If, as seems to be required by the weight of the evidence, that strip is to be regarded as having been formerly a part of Fort street, then it lies wholly in front of the respondent's land and over it only has the respondent a means of ingress and egress to and from her land. Complainant's land had a complete frontage on Fort street. That for an inconsiderable portion of its southern boundary it adjoins the strip cannot of itself make the complainant an abutter; such a construction of the statute would be repugnant to common sense. How much of the strip, in a southerly direction, is to be offered to the complainant? The whole of it, as seems to have been contemplated in his early correspondence with the Superintendent of Public Works, a half of it, or less? No good reason appears why he should be given a portion of what would naturally be Mrs. Rose's frontage, nor, as I think, does a proper construction of the statute require it.

If, on the other hand, the strip, as seems to be shown by some of the evidence, was a part originally, not of Fort street, but of what was known as Old Lane which continued northerly across the land of the complainant, then even more clearly was. Mrs. Rose the only abutter upon this strip. She should be offered the portion running across her land or upon which her land fronts and likewise the complainant should be offered the portion running across his land. The latter portion has been conveyed or offered to the complainant; he alone is an abutter as to that.